IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| M. MUELLER,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 20-cv-1244-RJD[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM AND ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying his application for Social Security disability benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for child's insurance benefits and supplemental security income in August 2018 (Tr. 185-97). The state disability agency denied Plaintiff's claim initially and on reconsideration (Tr. 78-79, 104-05). Plaintiff requested a hearing, which was held on January 23, 2020 (Tr. 30-56, 130-31). The ALJ issued an unfavorable decision on March 4, 2020 (Tr. 15-24). The Appeals Council denied review, and the decision of the ALJ became the final agency decision (Tr. 1-6). Administrative remedies have been exhausted and a timely complaint was filed in this

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Pursuant to 28 U.S.C. §636(c), this case was assigned to the undersigned for final disposition upon consent of the parties (Doc. 12).

Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issue:

1. The ALJ ignored the parts of the consultative examiner's report that were favorable to Plaintiff.

## Applicable Legal Standards

To qualify for benefits, a claimant must be "disabled" within the meaning of the applicable statutes[3]. Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show that there are

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

jobs existing in significant numbers in the national economy which plaintiff can perform. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

In his opinion, ALJ Hanan followed the five-step analytical framework described above. He found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 1, 2005. The ALJ found Plaintiff had the severe impairment of schizophrenia, but that he

did not have an impairment or combination of impairments that meets or medically equals the severity of any listing.  The ALJ found Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> He is limited to occupations that involve only simple, routine and repetitive tasks with only occasional changes in the work setting with no contact with the public, only casual and infrequent contact with co-workers, and contact with supervisory staff occurs no more than on an occasional basis.

Plaintiff had no past relevant work, but based on the testimony of a vocational expert, the ALJ concluded Plaintiff was able to perform jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

The Court reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to Plaintiff's arguments.

**1. Agency Forms**

Plaintiff was born in 1985 and he was 20 years old on the alleged date of onset.  He said he was disabled due to catatonia schizophrenia (Tr. 263).  At the time of his application, Plaintiff indicated he had completed two years of college.  He had previously worked as a cashier (Tr. 264).

**2. Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing on January 23, 2020 (Tr. 30).

Plaintiff testified he was enrolled in two courses at a community college (Tr. 36).  Plaintiff

lives with his father, and is responsible for cleaning and cooking (Tr. 37).

Plaintiff's brother, Steven Mueller, also testified at the hearing (Tr. 44). Mr. Mueller testified that Plaintiff does not drive, and he (Steven Mueller) takes Plaintiff to school once a week and to his doctor's appointments (Tr. 45-46). Steven Mueller also manages Plaintiff's medications, handles phone calls, and manages Plaintiff's finances (Tr. 46-47). Plaintiff was diagnosed with schizophrenia at age 21, about 13 years prior (Tr. 45). Steven Mueller testified Plaintiff's condition has improved over the past three years, but he still lacks personal skills, relational skills, and communication skills.

A vocational expert (VE) also testified at the hearing. The ALJ asked the VE a hypothetical question that corresponded to the RFC assessment. The VE identified three jobs that could be done by a person with Plaintiff's RFC: addressor, document preparer, and photocopy machine operator (Tr. 53). The VE also testified that a person with Plaintiff's RFC who was off-task ten percent of the workday or needed redirection from a supervisor once every hour or more could not work competitively.

### 3. Medical Records

Plaintiff was hospitalized in 2006 with new onset psychosis (Tr. 347). Plaintiff has been under the treatment of Dr. Saad Khan since at least 2014. Plaintiff was consistently assessed as having normal affect and mood, with good insight and judgment. Rarely, Plaintiff's mood and affect was noted as anxious. Plaintiff's medications typically consisted of Abilify, Benztropine, and Invega (Tr. 372-385, 391-395, 400-430).

### 4. Dr. Saad Khan's Opinion

In June 2019, Dr. Khan completed a Mental Residual Functional Capacity Assessment

wherein he assessed that Plaintiff had extreme limitations in many areas, including Plaintiff's ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of and length of rest periods (Tr. 396-399).

### 5. State Agency Consultants' Opinions

In November 2018, M.W. DiFonso, Psy.D., assessed Plaintiff's RFC based on a review of the record (Tr. 57-77).  Dr. DiFonso found moderate impairment in Plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and accept instructions and respond appropriately to criticism from supervisors.  Dr. DiFonso explained that Plaintiff's symptoms moderately limit his ability to carry out detailed tasks, but found Plaintiff is capable of simple one-two as well as multiple step tasks with moderate limitation of social demands.  Plaintiff's adaptive skills were within the normal limits.

In February 2019, Howard Tin, Psy.D., assessed Plaintiff's RFC based on a review of the record (Tr. 80-103).  Dr. Howard found Plaintiff had the same functional impairments and capability for work as Dr. DiFonso.

### 6. Consultative Examination

Dr. Harry Deppe performed a consultative psychological examination on Plaintiff in November 2018.  Plaintiff was on time, and his grooming and hygiene were noted as fair.

Plaintiff had no difficulty staying on task and his responses to questions or comments were generally coherent and relevant. He displayed no difficulty in terms of staying on task for the purpose of the evaluation. Plaintiff's fund of general information was good, and he was able to do math problems that were assigned and interpret proverbs. In the "Daily Activities" section of the report, Dr. Deppe noted Plaintiff's ability to complete tasks in a timely and efficient fashion appeared poor.

Dr. Deppe found Plaintiff's ability to relate to others, including fellow workers and supervisors was "fair, at best," as was Plaintiff's ability to understand and follow simple instructions, maintain attention required to perform simple, repetitive tasks, and withstand the stress and pressures associated with a day-to-day work activity (Tr. 386-389).

## Analysis

Plaintiff asserts the ALJ "cherry-picked" portions of Dr. Deppe's findings that were supportive of his decision and ignored evidence favorable to Plaintiff.

An ALJ's decision must be supported by substantial evidence, and the ALJ's discussion of the evidence must be sufficient to "provide a 'logical bridge' between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal citations omitted). This standard does not require an ALJ to evaluate every item of evidence in the record; however, the ALJ must grapple with evidence that may run counter to her conclusion, and cherry-picking only the favorable evidence is not sufficient. *See Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014) ("The ALJ must confront the evidence that does not support [her] conclusion and explain why that evidence was rejected.").

In support of his argument, Plaintiff explains the ALJ completely failed to address the

statement of Dr. Deppe that Plaintiff's "ability to complete tasks in a timely and efficient fashion appears poor" (Tr. 388). Plaintiff also makes brief reference to Dr. Deppe's finding that Plaintiff's ability to relate to others, understand and follow simple instructions, maintain attention required to perform simple repetitive tasks, and withstand the stress and pressures associated with a day-to-day work activity were "fair, at best," but he does not develop this argument.

At the outset, the Court clarifies that the statement of Dr. Deppe on which Plaintiff relies as the basis for his argument was included only in the section of Dr. Deppe's report entitled "Daily Activities," wherein Dr. Deppe noted various subjective statements given by Plaintiff. Notably, it was not included in Dr. Deppe's clinical impressions or diagnoses. In discussing Dr. Deppe's opinion, the ALJ indicated he found it "somewhat persuasive." The ALJ specifically addressed each of Dr. Deppe's clinical impressions, noting that Dr. Deppe's language was "not entirely consistent with the language used by the social security administration for classification of impairment," but found Dr. Deppe's opinion generally indicated Plaintiff was capable of performing simple tasks consistent with Plaintiff's assigned RFC. The ALJ explained why he did not find Dr. Deppe's opinion concerning Plaintiff's ability to manage his funds persuasive, noting it was not consistent with Plaintiff's performance during the mental status exam.

Here, Plaintiff himself seems to be cherry-picking in his reliance on Dr. Deppe's statement that Plaintiff's "ability to complete tasks in a timely and efficient fashion appears poor." Indeed, on review of the entirety of Dr. Deppe's report, there is little support for this statement as Dr. Deppe observed that Plaintiff "displayed no difficulty in terms of staying on task for the purpose of this evaluation" (Tr. 387). Dr. Deppe also found in his clinical impressions that Plaintiff's ability to maintain attention and perform simple, repetitive tasks was "fair, at best" (Tr. 389).

There is nothing specifically noted in Dr. Deppe's report to lend further support for a finding that Plaintiff's "ability to complete tasks in a timely and efficient fashion appears poor." Thus, the Court finds the ALJ did not err in not discussing this statement, particularly when an ALJ is not required to discuss every piece of evidence. *See Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008).

More generally, in reaching his conclusion, the ALJ adopted functional capacity restrictions based on his review and consideration of Plaintiff's impairments, the medical findings and opinions from a variety of medical sources, including state agency psychologists, and statements concerning Plaintiff's symptoms and attendant limitations.

Plaintiff's arguments are little more than an invitation for this Court to reweigh the evidence. He has not identified a sufficient reason to overturn the ALJ's conclusion. Even if reasonable minds could differ as to whether Plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester,* 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

## Conclusion

After careful review of the record as a whole, the Court is convinced that the ALJ committed no errors of law, and that his findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Plaintiff's application for disability benefits is **AFFIRMED**.

The Clerk of Court is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.**

**DATED: March 9, 2022**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**